Laurel Springs Land Co. *v.* Fougeray.

*For affirmance*—None.

---

LAUREL SPRINGS LAND COMPANY et al., appellants,

*v.*

RENE J. FOUGERAY, respondent.

F. with C. and K. formed a trading corporation. C. and K., as a majority of the board of directors, voted themselves inordinate salaries, withheld proper information from F., refused to declare dividends and conveyed away the assets to another corporation controlled by themselves. Pending the suit a reconveyance of these assets was made and set up by amended answer.—*Held,* (1) That F.'s remedy was by a decree setting aside the fraudulent conveyance and the resolutions fixing the salaries of C. and K. and that the decree should further secure to him proper access to the books of the concern and the right to a dividend to be declared out of all net profits not required in the legitimate business of the company. (2) That the decree below by which the business of the company was enjoined and a receiver for its property appointed and the

complainant permitted to retire from the corporation with a proportion of its assets must be reversed. (3) That when the specific frauds of the directors of a trading corporation are capable of complete redress within the principles of remedial and preventive equity, something more than a mere apprehension of a repetition of the frauds is necessary to justify the dismemberment of the corporation and the appointment of a receiver, if such a course is ever justified in a decree of first instance.

On appeal from a decree advised by Vice-Chancellor Pitney, whose opinion is reported in *Fougeray* v. *Cord, 5 Dick. Ch. Rep. 185.*

Fougeray, who is complainant, and Cord and Korb, who are defendants, formed a corporation by certificate under the general act of this state for the purpose of buying, selling, exchanging and improving real estate, with a capital of $1,500 and a corporate existence of fifty years. The first and only acquisition of land disclosed by the case was the purchase of the farm of one Stafford, to which the company took title soon after its incorporation. This tract was plotted into lots and the business of the company conducted with such success that in less than a year its sales amounted to nearly $50,000, so that after the payment of the balance due on the original investment a profit of nearly $40,000 remained, represented in large part by the obligations of lot buyers, secured upon the lands sold.

The three original incorporators are the sole owners of the company, the capital stock of which, consisting of thirty shares, is equally divided between them. All were directors, Cord was president, Korb was secretary and treasurer, and together they constituted a working majority of the board. The management of the business was most successful, but the behavior of the defendants toward the complainant was characterized throughout by fraudulent practices, consisting of (1) a suppression for wrongful purposes of information concerning the business of the concern, (2) the withholding of dividends, (3) the voting of inordinate salaries to themselves and (4) the conveyance of the assets and property to a corporate creature of their own.

Pending the suit a reconveyance of the property was made to the original corporation which, with an *ad interim* account, was set up by an amended answer filed in the cause.

Upon this state of facts the court of chancery decreed—

*First.* That the resolution awarding salaries and commissions and the deeds of conveyance by which the defendants sought to defraud the complainant should be set aside.

*Second.* That an account should be stated by the defendants in which they should credit themselves with either salary at $3,000 or commissions, but not with both.

*Third.* That the defendants and the corporation be enjoined from carrying on the business of selling land.

*Fourth.* That a receiver should be appointed who is directed to take into his possession all of the corporate property, real and personal.

*Fifth.* That there should be ascertained and paid to the complainant one-third of all the net assets, including contracts of sale, and a conveyance in fee-simple in severalty made to him by the receiver and the corporation of one-third of the unsold lots.

No mention is made in the decree of a surrender by the complainant of the stock held by him, but this is probably an oversight, as otherwise he would withdraw one-third of the property of the corporation and still be a one-third owner of the remaining corporate assets. From all of this decree the defendants appeal, not upon the facts, but upon the propriety of the remedy.

*Mr. David J. Pancoast,* for the appellants.

*Mr. Martin P. Grey,* for the respondent.

The opinion of the court was delivered by

GARRISON, J.

The bill contains four specific charges of fraud against the defendants:

*First.* Appropriating the profits by way of payment for services.

*Second.* Fraudulent conveyance of corporate property to themselves.

*Third.* Withholding information from the complainant.

*Fourth.* Failure to declare dividends.

All of these allegations are sustained by the proofs.

The remedy to which we think the complainant is thereupon entitled is as follows:

*First.* As to salaries and commissions. The decree below setting aside the resolution and putting the defendants to their election between a salary of $3,000 or commissions is affirmed.

*Second.* As to the fraudulent conveyance of corporate property. The decree sets aside the deeds of conveyance and by its silence as to a reconveyance accepts the restitution set up in the amended answer. This part of the decree is also affirmed.

*Third.* The right of the complainant to have access to the books of the company in the present condition of affairs should be secured to him by this decree, as the facts amply justify such an order. *Stettauer* v. *New York and Scranton Construction Co., 15 Stew. Eq. 46.*

*Fourth.* The power of the court of chancery to order the directors of a trading corporation to make a dividend of unused profits when they improperly refuse to do so is undoubted. The shareholders in such concerns not unreasonably expect to enjoy the fruits of successful enterprise in stated distributions of profits. When the by-laws are silent upon the subject the directors are invested with a discretionary power with regard to the time and manner of making such distribution, and so long as they act in the exercise of an honest judgment their authority is absolute. Where, as in the present case, the corporate scheme contemplates "the buying, selling, exchanging and improvement of real estate" during a corporate life of fifty years, it is evident that the power to determine how much of the current earnings shall be re-invested in the business must reside somewhere, and by the implied concurrence of the shareholders this right is committed to the board of directors; but there is also an implied condition that the confidence thus reposed shall be honestly exercised with reference to the avowed purpose of the company.

When the business of a trading corporation has by successful management been brought to a condition of financial prosperity,

Laurel Springs Land Co. *v.* Fougeray.

in which the profit, after the payment of all indebtedness, is more than twenty times the amount of the original capital, a reasonable share of the net earnings should be applied to the payment of stock dividends, though a part be reserved to enlarge the business itself. In the present case there was no proof of any honest purpose to enlarge the business of the company, the withholding of the dividends being a mere pretext for an opportunity to absorb the profits by fraudulent devices. Generally suits to compel the declaration of dividends must be in the name of the corporation, but where the corporation is a defendant and the majority of directors are parties charged with fraud in this very respect the suit will proceed to a decree upon the complainant's rights. In the present case the prayer of the complainant should be met by a decree requiring the defendants, as directors, to declare a dividend of all the net earnings not needed for the legitimate purposes of the company's business. And in order that the matter may remain under the scrutiny of the court, the decree directing the defendants to account and elect as to salary or commissions should be supplemented by requiring them to declare such reasonable dividends and to do so from time to time as the financial *status* of the business may warrant, with leave to the complainant to apply to the court of chancery for relief in the premises if it be necessary for him so to do. Further the decree should not go. So much of it as appoints a receiver and puts him in possession of the property of the corporation and directs a transfer to the complainant of a part of its net assets and a conveyance to him in fee of one-third of the unsold real estate must be reversed, as must also the injunction by which the business of the corporation was stopped.

The frauds of these defendants as directors of this corporation are all capable of adequate remedy and complete redress by the court within the principles of remedial and preventive equity. This being so, the court was not justified in a decree of first instance in stopping the business of a solvent company and taking possession of its affairs for the mere purpose of aiding the withdrawal of the injured party with a proportionate share of the corporate property and its increment, assuming such jurisdiction

to exist in any case in the first instance.   In case of a contumacious disregard of its decrees, a court of equity has and may put forth powers of a compulsatory and punitive character greatly in excess of those exercised by it in its ordinary remedial jurisdiction.   To justify the employment of these extraordinary powers there should be, however, something more than an apprehension that the frauds redressed, or others of a like nature, will be repeated in the face of the decree forbidding them.

The dismemberment of a corporation, even though it be a trading company, and the part distribution of its assets to a shareholder who is permitted to withdraw under the protection of the court, coupled with the disturbance of corporate functions incident to a receivership, are extreme powers and may not be decreed by a court of equity when the specific acts complained of are capable of redress and complete restitution and those apprehended fall within the ordinary jurisdiction by injunction.

The decree will be reversed, without costs, and remitted to the court of chancery in order that a decree may be entered in accordance with the views herein expressed.

*For reversal*—THE CHIEF-JUSTICE, DEPUE, DIXON, GARRISON, MAGIE, REED, LIPPINCOTT, VAN SYCKEL, ABBETT, BOGERT, BROWN, SMITH—12.

*For affirmance*—None.