In this case complainant filed a bill for the dissolution of a trust created under the will of Henry Lembeck, and a distribution of the assets. The clauses of the will in dispute are the third and the eighteenth. The third clause reads as follows: *Page 285 
"It is my will and I do order that unless my executors hereinafter named shall consider it advisable, they need not sell or divide my stock in the Lembeck Betz Eagle Brewing Company until twenty-five [25] years have elapsed after my decease. And in the meanwhile such stock shall be held by my executors, the survivors or survivor of them hereinafter named or those appointed in pursuance of the direction of my will, and the dividends which may accrue thereon shall be divided among the same persons in the same manner and proportion and for the same purpose as my residuary estate is directed to be divided under my said will, and when sold or disposed of all the proceeds thereof or after twenty-five [25] years, said stock or the proceeds thereof shall become and constitute a part of my residuary estate and be disposed of as such is directed to be disposed of under my will."
The eighteenth clause is as follows:
"I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, whatsoever and wheresoever, of which I may die seized, possessed of or in any way entitled, to my executors hereinafter named, the survivors or survivor of them in trust for division among my children as follows: To my daughter, Mary E. Harms, one share; to my executors in trust for my daughter, Katie Lembeck, one share to pay the income thereof at their discretion to my daughter Katie Lembeck, during the term of her natural life, and after her death same to revert to my residuary estate. To the children of my son, Harry F. Lembeck, one share.
"To my executors in trust for my son Albert B. Lembeck one share to pay the income thereof at their discretion to my son, Albert B. Lembeck, during the term of his natural life, and after his death I bequeath the same to his child or children now living, share and share alike.
"To my executors in trust for my son, Victor H. Lembeck, one share to pay at their discretion the income thereof to him during the term of his natural life, and after his death I give and devise the said share, so devised to his brothers and sisters, also brothers and sister of the half blood in equal parts the issue of any one of them who may die leaving issue, them surviving to take the parents' share per stirpes.
"To my son, Gustav W. Lembeck, one share.
"To my daughter, Ida Bowen, nee Lembeck, one share.
"To my son, Otto A. Lembeck, one share, making in all a division of eight shares."
It thus appears that complainant Katherine Lembeck has a life interest under the eighteenth clause above quoted.
Testator died July 26th, 1904. He owned at the time two thousand six hundred and thirty-six shares of Lembeck *Page 286 Betz Eagle Brewing Company which are affected by the clauses of the will above quoted. The total stock outstanding was six thousand four hundred shares; so that the estate owned less than one-half.
After the National Prohibition Amendment went into effect in 1919, the company abandoned the brewing business and became the New Jersey Refrigerating Company. It is now in process of dissolution by receivers appointed by me.
Complainant challenges the management of the company by the directors for a period of twenty years, that it retained profits for the purpose of expanding its business and enlarging its plant; it purchased saloon fixtures for customers and took chattel mortgages as security; it loaned money to customers on real estate, and paid customers' license fees; it purchased real estate and rented it to customers; it assisted customers to purchase realty and took back mortgages for advances to secure desirable saloon sites.
It is not shown that any of these acts were improper, or outside the usual course of procedure in such a business.
Counsel for complainant asserts that the bill alleges fraud. If it does the allegations were not sustained at the hearing and I shall find, as a fact, that there was no fraud.
In substance this bill seeks to have the court review the entire business of a corporation during the past twenty years and to find that more dividends might have been paid than were paid. It is apparent that Lembeck, the testator, meant to give the life tenants dividends and only dividends. If the stock were sold or disposed of, the proceeds were to go into the residuary estate. This is what has actually happened. It is being disposed of by the liquidation. The testator's intention can be carried out by continuing the life estates and giving the life tenants the income on the amounts paid by the receivers in liquidation of the stock in which the life tenants are interested.
In Martin v. Kimball, 86 N.J. Eq. 10; affirmed, 86 N.J. Eq. 432,
the court said that if there were no imperative direction to sell and if the property was not in a state other than that in which it was contemplated to be at the time of testator's death, the life tenant was not entitled to any share of the proceeds as income. *Page 287 
Again it should be observed that the corporation is not a party to this suit. The United States supreme court held in Gibbons
v. Mahon, 34 Law Ed. 525 (1890 — at p. 539), that corporate action in not distributing earnings cannot be tried in a suit between life tenants and remaindermen because the corporation is a necessary defendant.
In the case of Stevens v. United States Steel Corporation,68 N.J. Eq. 373 (at p. 377), the court said:
"The general rule is well settled that the directors of trading corporations are invested with a wide discretionary power in regard to the distribution of profits in the form of dividends among the stockholders. Subject, of course, to provisions in the charter and also to the by-laws of the company, it is for the directors to say whether profits shall be distributed to the stockholders or retained for the purpose of the corporate business. It is, however, equally well settled that this discretionary power is not absolute and when the `directors improperly refuse to make a division of unused profits' a court of equity will intervene on behalf of any stockholder who may complain. Laurel Springs Land Co. v. Fougeray, 50 N.J. Eq. 756,759, and other cases."
In the Lembeck Case no stockholder ever complained and the directors never refused.
On page 394 of the Stevens Case, the court said:
"We have seen that the mere fact that earned profits whatever they may be and in whatever shape they may exist, remain undistributed to the extent of six per cent. of the capital stock of the corporation, is not of itself significant of any improper refusal of the directors to declare and pay a dividend out of this fund."
In Blancard v. Blancard and Co., 2 N.J. Mis. R. 552, Vice-Chancellor Bentley discussed a situation somewhat similar to that in the case at bar. He said that when the surplus is not composed of liquid assets, but is represented by additions to the business which has changed in its nature, as is the case here, and where fraud is not shown this court will not substitute its judgment for that of the directors of the corporation.
What I am asked to do now is to review this corporation's *Page 288 
affairs since 1904, bearing in mind that it has changed its business from that of brewing to that of refrigerating, and to substitute my discretion for that of directors who have managed the business for all those years; and this when no fraud has been shown or any unusual departure from the ordinary course of a concern of this kind.
The fact is that this company's business was automatically ended by the prohibition amendment. The directors endeavored by a reorganization and in other ways to conserve the assets. That they did so I know as a fact, because I have been in charge of the dissolution proceedings for nearly six years, and as the company is liquidated it is clearly apparent that those in interest will receive a great deal more than they ever anticipated irrespective of the large charges for administration.
In Lillard v. Oil, Paint and Drug Co., 70 N.J. Eq. 197,
Vice-Chancellor Emery said (at p. 216):
"So long as the capital reserved is retained for the benefit of the whole company, and not distributed to the majority stockholders at the expense of the minority, I see no reason to interfere with or question the action of the majority of the stockholders in this case because of the supposed motive of reserving their own profits instead of dividing them."
The learned vice-chancellor was dealing with a case in which the stockholders made a reservation of capital. In the case before me the stockholders did nothing. They accepted the dividends as they received them, and the statements of business issued to them, and made no complaint against the activities of the directors whom they themselves elected either by their votes or their proxies. It seems clear, therefore, that if larger dividends should have been declared, they are reflected in the value of the distributive shares of stock. This is so because there is no claim that these accumulated profits — if there were any — were deflected from the stockholders.
I therefore cannot see any necessity for going over the transactions of this company for the past twenty years in an effort to restate accounts to which, at the time no stockholder objected. It would be, in my opinion, an attempt by this court to substiute its discretion in retrospect for the discretion *Page 289 
of directors who were at the time thoroughly familiar with all phases of the business as they arose. No wrong-doing of any kind has been shown and a review now of the situation would not be any more accurate, perhaps less so, than the situation that now exists.
I will advise a decree dismissing the bill.