### DEXTER & CARPENTER, Inc., v. UNITED STATES.

(District Court, D. Delaware. July 30, 1921.)

No. 3 Dec. Term, 1920.

1. **United States ⬅=135—Action for price of coal, requisitioned by Director General as agent of Fuel Administrator, held not against Director General.**

Though neither Act Aug. 29, 1916 (Comp. St. § 1974a), authorizing the appointment of, nor the President's proclamation appointing, the Director General of Railroads, conferred on him the power to requisition property, the United States Fuel Administrator, under the order delegating to him the President's power under Lever Act, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ii), to requisition foods, fuels, etc., might make the person holding the office of Director General his agent, so that an action against the United States to recover a balance owing for coal requisitioned for the use of a railroad, the petition in which, though it alleged the Director General requisitioned the coal, made it clear he did so individually, as agent of the Fuel Administrator, is not one against the Director General.

2. **United States ⬅=127—Held proper defendant in action for balance owing for coal requisitioned by Director General as agent of Fuel Administrator.**

Under Lever Act, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ii), and in view of the constitutional obligation of the United States to compensate the owner of property taken for public use, from which the law will imply a promise to make such compensation, action will lie against the United States to recover the balance due for coal requisitioned by the Director General of Railroads as agent of the United States Fuel Administrator.

---

⬅=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **United States ☞140—Petition for balance owing for coal requisitioned under Lever Act held sufficient, though not alleging necessity to common defense.**

In view of Act Aug. 29, 1916 (Comp. St. § 1974a), authorizing the President to assume control of the railroads, and the President's proclamation pursuant thereto, a petition, in an action to recover the balance owing for coal requisitioned by the Director General of Railroads as agent of the United States Fuel Administrator, to whom was delegated the powers of the President, under Lever Act, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ii), to requisition foods, fuels, etc., necessary to the common defense, *held* sufficient, though it did not expressly allege that the coal was necessary to the common defense; the railroads being operated by the United States as a war measure and as part of the common defense after, as well as before, the Armistice, and the necessity of the taking being for the exclusive determination of the executive.

4. **Pleading ☞7—One suing United States for balance owing for coal requisitioned under Lever Act need not allege necessity of taking, that being presumed.**

In an action against the United States for balance owing for coal requisitioned by the Director General of Railroads as agent of the federal Fuel Administrator, to whom were delegated the powers of the President under Lever Act, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ii), to requisition foods, fuel, etc., it was not necessary to plead the necessity of the taking, as it must be presumed that the taking was necessary.

5. **United States ☞140—Petition to recover balance owing for coal requisitioned under Lever Act held sufficient, though not alleged fixing price deemed necessary for prosecution of war.**

A petition in an action against the United States to recover the balance owing for coal requisitioned by the Director General of Railroads, as agent of the Fuel Administrator, under the Lever Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛kk, 3115⅛l–3115⅛r), alleging the amount of compensation to be paid as ascertained by an order of the Fuel Administrator, *held* sufficient, though it did not allege that the act of fixing the price was deemed necessary for the efficient prosecution of the war, as provided in section 25 (section 3115⅛q); the requisition having been made under section 10 (section 3115⅛ii), requiring the ascertainment of a just compensation, which the statute does not require to be ascertained under section 25.

6. **Courts ☞426—Liquidated balance less than $10,000 for coal requisitioned under Lever Act recoverable only under Tucker Act.**

The jurisdiction of the District Court under Lever Act, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ii), requiring the President to ascertain and pay a just compensation for foods, fuels, etc., requisitioned for the common defense, being limited to controversies in which the compensation fixed is not satisfactory, recovery of a balance of $9,850.98, owing for coal requisitioned under the act, must be had pursuant to the Tucker Act and Judicial Code, § 24 (20) being Comp. St. § 991 (20) the amount sued for in such case being liquidated.

At Law. Action by Dexter & Carpenter, Inc., against the United States. Demurrer to petition overruled.

William S. Hilles, of Wilmington, Del., and William B. Symmes, Jr., of New York City, for plaintiff.

James H. Hughes, Jr., U. S. Atty., John Biggs and Percy Warren Green, all of Wilmington, Del., for the United States.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

MORRIS, District Judge. This is a demurrer to a petition filed by Dexter & Carpenter, Inc., a corporation of the state of Delaware, against the United States, to recover the sum of $9,850.98, claimed to be the balance due for coal of the plaintiff requisitioned between October 30 and December 31, 1919, and diverted to the Pennsylvania Railroad. It appears from the petition that the requisition was made by the Director General of Railroads, acting under an order of the United States Fuel Administrator dated October 31, 1919. That order, after reciting the previous suspension of the orders of the Fuel Administrator dated January 14, 1918, and May 25, 1918, in part provides:

"I hereby restore the said order of January 14, 1918, and said portion of the order of May 25, 1918, to like effect as if they had not been suspended, and I designate the Director General of Railroads and his representatives to carry into effect the said order of January 14, 1918, and to make such diversions of coal which the railroads under his direction may, as common carriers, have in their possession, as may be necessary in the present emergency to provide for the requirements of the country in order of priority set out in the preference list included in the order of the United States Fuel Administrator of May 25, 1918, as follows: (a) Railroads. (b) * * *"

The coal, when requisitioned, was in the possession of the railroads as common carriers, and the railroads were then under the direction of the Director General. The causes of demurrer assigned are:

"(1) For that it nowhere appears in said petition that the said the United States is any way connected with said matters therein alleged.

"(2) For that it nowhere appears in said petition that the said the United States is a proper party defendant.

"(3) For that it nowhere appears in said petition that the coal alleged to have been requisitioned by the said defendant was taken for any of the purposes permitted by the said Act of August 10, 1917, to wit: That the said requisitioning of coal was 'necessary to the support of the Army or the maintenance of the Navy, or any other public use connected with the common defense.'

"(4) For that it nowhere appears in said petition that the act of fixing the price for coal alleged to have been requisitioned was deemed necessary in the judgment of the said defendant for the efficient prosecution of the war."

In support of its first and second causes of demurrer the defendant urges that the cause of action, if any, set up in the petition, is against the Director General of Railroads, and not against the United States. The plaintiff, on the other hand, takes the position that the United States is liable for all acts of the Director General during the period of federal control of railroads, and cites Westbrook v. Director General of Railroads (D. C.) 263 Fed. 211, and Haubert v. Baltimore & O. R. R. Co. (D. C.) 259 Fed. 361, in support of its contention.

The Director General of Railroads was appointed and his duties defined by a proclamation of the President (40 Stat. 1733), acting under and by virtue of an Act of Congress of August 29, 1916 (39 Stat. 645 [Comp. St. § 1974a]). Neither the statute under which he was appointed nor the proclamation of the President making the appointment purported to confer upon the Director General of Railroads power to requisition property. The powers of the Fuel Administrator, on the contrary, were derived through an order of the President, dated August 23, 1917, made by virtue of the Lever Act (Act Aug. 10, 1917,

c. 53, 40 Stat. 276 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛kk, 3115⅛l–3115⅛r]). The order of appointment delegated to the Fuel Administrator the power and authority vested in the President by that act in so far as it pertained to fuel, section 10 of which provides in part:

"That the President is authorized, from time to time, to requisition foods, feeds, fuels, and other supplies necessary to the support of the Army or the maintenance of the Navy, or any other public use connected with the common defense, and to requisition, or otherwise provide, storage facilities for such supplies; and he shall ascertain and pay a just compensation therefor." Section 3115⅛ii.

[1] The Fuel Administrator, necessarily and as he was authorized to do, appointed agents and representatives to perform acts required to be performed by him. One of such agents was the Director General of Railroads, appointed by the above-mentioned order of October 31, 1919. It is, of course, manifest that the Fuel Administrator did not and could not, by that order or otherwise, enlarge the powers of the Director General as such; but it is equally clear that he could make the person holding the office of Director General an agent of the Fuel Administrator, and could in the order appointing such agent designate by official title, instead of by individual name, the person so appointed. The adoption by the Fuel Administrator of this method in designating the person holding the office of Director General as an agent of the Fuel Administrator could not consolidate the two offices of Director General and agent of the Fuel Administrator, or transform an act done in one capacity by the individual holding the two offices into an act done in the other capacity. While paragraph B of the petition alleges that "the Director General of Railroads and his representatives did * * * requisition for public use * * * coal owned by the plaintiff," yet the remaining allegations of the petition make it clear that such act was done by the individual so designated, not in the capacity of Director General, but as agent or representative of the Fuel Administrator under the latter's order of October 31, 1919. It follows, I think, that the cause of action set up in the petition is not one against the Director General of Railroads.

[2] The liability of the United States for coal properly requisitioned by the President through the Fuel Administrator, his agents and representatives, is expressly provided for by section 10 of the act authorizing the requisition. It provides that "he [the President] shall ascertain and pay a just compensation therefor." Furthermore, the Supreme Court, in United States v. Great Falls Mfg. Co., 112 U. S. 645, 656–657, 5 Sup. Ct. 306, 311 (28 L. Ed. 846), quoted with approval in United States v. Lynah, 188 U. S. 445, 462, 23 Sup. Ct. 349, 354 (47 L. Ed. 539), said:

"* * * We are of opinion that the United States, having by its agents, proceeding under the authority of an act of Congress, taken the property of the claimant for public use, are under an obligation, imposed by the Constitution, to make compensation. The law will imply a promise to make the required compensation, where property to which the government asserts no title,

is taken, pursuant to an act of Congress, as private property to be applied for public uses."

I am therefore of the opinion that the petition discloses that the United States is a proper party defendant.

[3] The third ground of demurrer questions the legality of the taking of the coal. It challenges the sufficiency of the petition, in that it fails expressly to allege that the coal taken was "necessary to the support of the Army or the maintenance of the Navy or any other public use connected with the common defense," as provided in section 10 of the Lever Act. The petition, however, states when the coal was taken, by whom it was taken, the authority of the officer taking it, and that the railroad to which the coal was diverted "was operated by and under the control of the President of the United States, through his agent, the said Director General of Railroads, and that said coal was used and consumed by said Pennsylvania Railroad." The act of Congress (39 Stat. 645) by virtue of which the United States took possession and assumed control of the railroads provides:

"The President, in time of war, is empowered, through the Secretary of War, to take possession and assume control of any system or systems of transportation, or any part thereof, and to utilize the same, to the exclusion as far as may be necessary of all other traffic thereon, for the transfer or transportation of troops, war material and equipment, or for such other purposes connected with the emergency as may be needful or desirable."

The proclamation of the President (40 Stat. 1733), made by virtue of the last-mentioned statute, provides:

"And whereas, it has now become necessary in the national defense to take possession and assume control of certain systems of transportation and to utilize the same: * * * Now, therefore, I, Woodrow Wilson, President of the United States, * * * do hereby * * * take possession and assume control * * * of each and every system of transportation * * * located wholly or in part within the boundaries of the continental United States. * * *"

The railroads were being operated by the United States as a war measure and as a part of the common defense. Northern Pac. Ry. Co. v. North Dakota, 250 U. S. 135, 39 Sup. Ct. 502, 63 L. Ed. 897. This was as true after the signing of the Armistice as before. Hamilton v. Kentucky Distilleries Co., 251 U. S. 146, 40 Sup. Ct. 106, 64 L. Ed. 194. It clearly appears from the petition that the executive branch of the government had legal power and authority to take coal for a public use connected with the common defense, and that plaintiff's coal was taken for that purpose. Whether the taking was "necessary" was for the exclusive determination of the executive branch of the government, and its decision upon that matter is not subject to judicial review, and consequently is not here in issue. Dakota Cent. Tel. Co. v. South Dakota, 250 U. S. 163, 39 Sup. Ct. 507, 63 L. Ed. 910, 4 A. L. R. 1623.

[4] Viewed from another aspect, and considering, in connection with the legal authority of the executive to take the coal, the fact that the coal was retained by the United States and consumed in the operation of the railroads controlled by it, and that this is a suit for

compensation, and not for a wrongful taking, it must be presumed against the United States as a matter of law that the taking was necessary. United States v. Lynah, 188 U. S. 463, 23 Sup. Ct. 349, 47 L. Ed. 539; United States v. Great Falls Mfg. Co., 112 U. S. 645, 5 Sup. Ct. 306, 28 L. Ed. 846. It is a rule of pleading that what the law will presume need not be alleged. Perry on Common Law Pleading, p. 369. I am of the opinion that the petition is not defective, as charged by the third cause of demurrer.

[5] The fourth cause of demurrer is concerned, not with the taking of the coal, but with the ascertainment of the compensation therefor. With respect to the ascertainment of the compensation the petition alleges that the compensation to be paid plaintiff for the coal taken and requisitioned was ascertained to be $46,234.65, of which amount $36,-383.67 was paid to the plaintiff by the Pennsylvania Railroad under an express stipulation that the payment and receipt of the sum paid should be without prejudice to the rights of the plaintiff or of the United States. This suit is to recover the difference between the amount so ascertained and the amount so paid, or $9,850.98. The cause of demurrer now under consideration is based upon section 25 of the Lever Act, which provides in part:

"That the President of the United States shall be, and he is hereby, authorized and empowered, whenever and wherever in his judgment necessary for the efficient prosecution of the war, to fix the price of coal and coke, wherever and whenever sold, either by producer or dealer, to establish rules for the regulation of and to regulate the method of production, sale, shipment, distribution, apportionment, or storage thereof among dealers and consumers, domestic or foreign. * * *" Section 3115⅛q.

I fail to see that section 25 is involved in any way. The requisition was made under section 10, not under section 25. The statute does not require that the compensation for coal taken under section 10 shall be ascertained under section 25. I do not understand the petition to allege that the compensation was ascertained under section 25. It does allege that the compensation was ascertained by an order of the Fuel Administrator of January 17, 1919, a copy of which is annexed to the petition, but it does not allege that the order relied upon was made solely under the powers conferred by section 25. The question ultimately will be, I take it, whether that order will support the allegation of the petition that compensation for plaintiff's coal was ascertained to be the sum of $46,234.65, and the answer to that question will depend upon whether that order is effective as an ascertainment under section 10 of compensation for plaintiff's coal. Those questions are not raised by the demurrer, have not been debated by counsel, and consequently will not be now considered.

[6] Although I find from the allegations of the petition that the requisition was made pursuant to section 10, I do not mean to be understood as thereby also finding that the nature of the jurisdiction of this court over this case is that conferred by section 10. The jurisdiction conferred upon this court by that section is over controversies in which the compensation determined under that section is not satis-

factory to the person entitled to receive the same; that is, over controversies in which the amount sought to be recovered is unliquidated. It is alleged by the petition that the amount sought to be recovered in this case has been liquidated, but remains unpaid.   In such instances the recovery, if any, may and must be had pursuant to the Tucker Act (24 Stat. 505).   Judicial Code, § 24 (20) being Comp. St. § 991 (20). I think United States of America v. Pfitsch, 256 U. S. ——, 41 Sup. Ct. 567, 65 L. Ed. ——, decided by the Supreme Court June 1, 1921, United States v. McGrane (C. C. A.) 270 Fed. 761, and Filbin Corporation v. United States (D. C.) 266 Fed. 911, and (D. C.) 265 Fed. 354, not inconsistent with this conclusion.

Demurrer overruled.