IN THE MATTER OF THE APPLICATION FOR A DISSOLU-
TION OF THE EVENING JOURNAL ASSOCIATION, A COR-
PORATION OF THE STATE OF NEW JERSEY.

POST–STANDARD COMPANY, ET ALS., PETITIONERS–AP-
PELLANTS, v. THE EVENING JOURNAL ASSOCIATION,
ET ALS., DEFENDANTS–RESPONDENTS (TWO CASES).

Argued January 3, 1949—Decided February 21, 1949.

Mr. *Edward J. O'Mara* argued the causes for Post-Standard Company, Samuel I. Newhouse and Norman N. Newhouse, appellants in the first and respondents in the second of the above entitled matters (*Messrs. O'Mara, Conway & Schumann,* attorneys).

Mr. *John D. McMaster* argued the causes for The Evening Journal Association, one of the respondents in the first and one of the appellants in the second of the above entitled matters.

Mr. *James D. Carpenter, Jr.,* argued the causes for J. Albert Dear, Cyrene B. Dear and Dear Publication & Radio, Inc., respondents in the first and appellants in the second of the above entitled matters (*Messrs. Carpenter, Gilmour and Dwyer,* attorneys).

The opinion of the court was delivered by

Ackerson, J. Appeals are presented from two orders of the former Court of Chancery made in a proceeding instituted by the petition of Post-Standard Company, a New York corporation, Samuel I. Newhouse and Norman N. Newhouse, all three being stockholders, and said natural persons also being directors, of The Evening Journal Association, a corporation of New Jersey, seeking the dissolution of the latter corporation pursuant to *R. S.* 14:13–15, commonly referred to as the "deadlock" statute. This legislation was passed in 1938 and is entitled "An Act concerning the dissolution of corporations, and supplementing Title 14 of the Revised Statutes." It provides, *inter alia,* as follows:

"Every corporation organized under Title 14 of the Revised Statutes may be dissolved by the decree of the Court of Chancery when it is made to appear that the corporation has an even number of directors who are equally divided respecting the management of its affairs, and that the voting shares * * * are equally divided into two independent ownerships or interests and one-half thereof is owned or controlled by persons favoring the course or views of part of the directors, and one-half is owned or controlled by persons favoring the course or views of the other directors, or that the persons owning or controlling the voting shares are unable to agree on, or vote for, the election of a board of directors consisting of an uneven number, and, in either such event, the holders of shares entitling them to exercise one-half or more of the voting power shall have voted for such dissolution, or shall have agreed in writing thereto, or shall join in filing the petition for dissolution. The petition for dissolution may be filed by one-half of the directors when there is an even number of directors who are unable to agree as to management, if the holders of one-half or more of the shares have voted for or agreed in writing to such dissolution, or it may be filed by the persons holding one-half of the voting shares when such persons are unable to agree with the persons holding the other half of such shares as hereinabove provided. * * *

"The provisions of chapter thirteen of Title 14 of the Revised Statutes shall be applicable hereto, except so far as they be inconsistent with the provisions hereof."

The petition alleges, in effect, that the entire capital stock of The Evening Journal Association is equally divided between two groups of stockholders, one, consisting of the above named petitioners, controlled by Samuel I. Newhouse, and the other, consisting of the defendants, Dear Publication &

Radio, Inc., J. Albert Dear and his wife Cyrene B. Dear, which group is controlled by the said J. Albert Dear. Each group is represented by two directors on a board consisting of only four members, and because thereof a stalemate exists between the opposing factions on the board representing the aforesaid groups of stockholders with respect to important subjects of corporate management to the great detriment of the corporation and its stockholders. The petitioners therefore pray that the Court of Chancery "assume jurisdiction of The Evening Journal Association", pursuant to the aforesaid statute, appoint "one or more disinterested receivers" to take possession of its property and effects with the authority usually exercised by receivers, "to the end that the business and assets of the [corporation] be liquidated and distributed under the supervision" of the court. Further "that this Court may make such other orders and decrees as may be deemed necessary and proper for the protection of all of the stockholders and all other parties in interest, and as may be agreeable to equity and good conscience".

The Evening Journal Association responded to this petition with an answer, answer in lieu of plea (under the then existing practice), and a counterclaim. The other defendants, Dear Publication & Radio, Inc., Cyrene B. Dear and J. Albert Dear, united in filing similar pleadings asserting substantially the same defenses and counterclaim.

The answers consist of certain admissions and denials, principally a denial of petitioners' assertion that the Newhouse interests own one-half of the capital stock in question. The answers in lieu of plea assert, primarily, that The Evening Journal Association was incorporated prior to the enactment of the legislation here invoked, and therefore the dissolution of the corporation pursuant thereto would be in violation of the defendants' constitutional guaranties. The counterclaims assert, in substance, that the stock alleged to be held by the Newhouse interests was acquired from the former owners, Walter M. Dear and members of his family, under an alleged collusive scheme whereby the sale was not a fully consummated transaction, but payment was arranged for upon

an installment plan basis by which part of the consideration for the stock is being paid for from the treasury of The Evening Journal Association through the guise or device of the employment of said Walter M. Dear as treasurer of the corporation at a salary of $26,000 per year—a sum alleged to be far in excess of the worth of the services performed and to be performed by him. It is then alleged that so many shares of said stock as were paid for by the excess of said salary over the reasonable value of the services rendered, belong in equity to the defendant The Evening Journal Association, and the court is asked to determine the amount of such over-payment and the number of shares paid for thereby, and to impress a trust on such shares in favor of said defendant and decree the transfer thereof to its treasury. The effect of this, if established by competent proof, would be to sustain the defense raised by the defendants' answers, that the Newhouse interests do not own the jurisdictional amount of stock required to invoke the statute upon which they rely.

The petitioners moved to strike these pleadings on the grounds, among others, that the answers and answers in lieu of plea are sham, frivolous and disclose no defense, and that the counterclaims are addressed to the inherent equitable jurisdiction of the court which cannot be exercised in the statutory proceeding instituted by the petition under *R. S.* 14:13-15. Specifically it is claimed that the court, under these statutes, acts merely as a legislative agent for the purpose indicated, and the relief sought by the counterclaims is obtainable only through a plenary suit in equity.

The court below took the position that the charges made in the counterclaims "go to the foundation of the petitioners' claims," and ordered that answers thereto be filed, "to the end that the issue therein raised may be tried out, pursuant to the practice under *Rule* 27" of the former Court of Chancery, and that the "motions * * * * stand over until the hearing, pursuant to the practice under *Rule* 69" of the court which rules respectively give the court discretion to order separate hearings of causes joined in the same suit, and to reserve

the disposition of motions until final hearing. It is from this order that the first of the aforesaid appeals is taken.

We are confronted *in limine* by the defendants' contention that this is not an appealable order because made in the progress of the suit merely for the purpose of putting the case fairly at issue and affording the parties a hearing according to one of the tests mentioned in *Stevens v. Stevens,* 24 *N. J. Eq.* 574, 576 *(E. & A.* 1874). However, *R. S.* 2:29–117, which was operative when this appeal was taken, provides that "All persons aggrieved by any order or decree of the court of chancery may appeal therefrom, * * *." Not every order is appealable, but only those which are of such a nature that someone is "aggrieved" thereby. "The very object of the appeal is to redress an injury. If there is no injury to redress there can be no appeal." *Coryell, Ex., v. Holcombe,* 9 *N. J. Eq.* 650, 652 *(E. & A.* 1854). Hence an order which goes, "to some extent, to the merits of the controversy, or substantially affect[s] the legal or equitable rights of the party appealing" works an injury and is appealable, otherwise not. *Camden & Amboy R. R. Co. v. Stewart,* 21 *N. J. Eq.* 484, 488 *(E. & A.* 1870); *Stevens v. Stevens, supra; Read v. Huff,* 40 *Id.* 229, 232 *(E. & A.* 1885).

The order *sub judice,* in so far as it requires the petitioners to answer the counterclaims "to the end that the issue therein raised may be tried out", is a tacit determination that the court below had jurisdiction to hear the issue tendered by the counterclaims in a proceeding initiated under *R. S.* 14:13–15. Obviously the order affects the petitioners' substantial rights and is therefore presently reviewable under the foregoing test. While the defendants, for obvious reasons, make no reference to it, nevertheless, we point out in passing, especially in view of the following conclusions anent the character and scope of the lower court's jursdiction, that the method of review by appeal, rather than by writ of certiorari, as it then existed, was properly adopted in this instance.

This brings us to the dispositive question raised by this appeal, i. e., whether *R. S.* 14:13–15 constituted the Court of

Chancery a mere legislative agent to administer a purely statutory proceeding, or whether it conferred judicial power upon the court to be exercised according to the normal procedures in equity in the accomplishment of the legislative purpose.

Careful study of this statute has convinced us that it confers judicial power to be exercised according to the ordinary processes of chancery. It provides for a "decree" of dissolution by the "Court of Chancery." A decree is the judicial decision of a litigated cause by a court of equity. *Hudson Trust Co. v. Boyd*, 80 *N. J. Eq.* 267, 273 *(Ch. 1912); Bull v. International Power Co.*, 84 *Id.* 209 *(Ch. 1915); Bouv. Law Dict. (Rawle's rev.)* 521. The decree is to be made only after the determination of certain jurisdictional facts, i. e., that the membership of the board of directors is even in number and equally divided with respect to corporate affairs, and that the ownership of its voting shares is also equally divided in the same way resulting in a stalemate in corporate management. These are undoubtedly justiciable questions to be decided by the court in its judicial capacity and not as a mere agent of the legislature. *Cf. In re Public Service Railway Co.*, 95 *N. J. Eq.* 31 *(Ch. 1923); Delaware Bay & Cape May R. R. Co. v. Markley*, 45 *Id.* 139 *(E. & A.* 1888*)*.

We consider that the jurisdiction conferred by the statute in question is akin to that conferred upon the Court of Chancery for the dissolution and winding up of an insolvent corporation under *R. S.* 14:14–3 *et seq.*, and, since the latter is exercisable through a judicial proceeding in a court of equity, reviewable by appeal rather than by certiorari under the former practice, so is the former for the same reasons.

It will be noted that no specific procedure is provided in the instant statute for exercising the important power conferred upon the court and for the ascertainment of the jurisdictional facts upon which its exercise depends. Under such circumstances the power conferred is ordinarily exercised according to the usual procedures of the designated court. *Cf. In re Foran*, 85 *N. J. Eq.* 288 *(Ch. 1917); In re Martin*, 86 *Id.* 265, 273 *(Ch. 1916); Pritchard v. Howell*, 87

*Id.* 252, 254 *(Prerog.* 1917*);* *Borden v. Wolf Silk Co., Inc.,* 108 *Id.* 438, 441 *(Ch.* 1931*).*

In aid of the jurisdiction thus conferred, the statute in question incorporates by reference the provisions of chapter thirteen of Title 14 of the Revised Statutes, except so far as they are inconsistent with the first mentioned statute. The provisions thus incorporated undoubtedly invoke equitable jurisdiction in certain instances. Thus *section* 14:13–7 provides that upon dissolution the Court of Chancery, on the application of a creditor or stockholder, may either continue the directors as trustees or appoint one or more receivers to take charge of the estate and effects of the corporation and wind up its business, and their power may be continued so long as the court "shall have jurisdiction of such application and of all questions arising in the proceedings thereon, and may make such orders and decrees therein as justice and equity shall require".

It is to be noted also that the petition in the instant case was undoubtedly framed on the theory that the equitable power of the Court of Chancery was invocable under the instant statute, for it not only prays for the appointment of receivers in accordance with the section last referred to, but also concludes with a general prayer "that this court may make such other orders and decrees as may be deemed necessary and proper for the protection of all of the stockholders and all other parties in interest, and as may be agreeable to equity and good conscience." The petitioners therefore invoked the equitable jurisdiction which they now insist does not exist.

In the final analysis, however, the jurisdiction of the court to decree the dissolution of the corporation under the circumstances exhibited by the petition before us is exercisable only if there is in fact an equal division of its stock between the two contending groups of stockholders. While there may be such division of record, as asserted in the petition, nevertheless, if the fact be that the petitioners do not own 50% of the stock because some of it had been improperly purchased with corporate funds and, upon the theory of a trust, belongs to the corporation as asserted in the counter-

claims, then the statute could not be invoked for lack of a jurisdictional pre-requisite. The petitioners vaguely challenge this view on the theory that the corporation may recover any money improperly paid out of its treasury. Perhaps it could, but it could also demand and retire the stock under the circumstances related in the counterclaims. It cannot be supposed that the legislature, having invested the Court of Chancery with the judicial power to determine the question of stock ownership, and the other jurisdictional questions pre-requisite to a dissolution of the corporation, intended that such determination should rest entirely upon the corporate record of stock ownership. Nor do we perceive the necessity of relegating the defendants to a plenary suit in equity to determine the question thus raised by their counterclaims. The statute, as already observed, provides no specific procedure for exercising the power which it confers, and, under such circumstances, the rule is that the usual procedures of the court are available. Indeed this is one of the reasons which distinguishes the present case from those cited by the petitioners in opposition to the views hereinabove expressed. Therefore, since the counterclaims directly affect the jurisdictional questions upon which the petitioners' asserted rights depend, the court should entertain them for that purpose in this proceeding. The petitioners have undoubtedly submitted themselves to the jurisdiction which they themselves invoked.

The statute, being of comparatively recent origin, has not received, heretofore, interpretation by our courts, except that in the case of *Dorf v. Hill Bus Co.*, 140 *N. J. Eq.* 444 *(E. & A. 1947)* the court held that equal division of stock ownership between two contending groups was a jurisdictional pre-requisite. We have examined the cases cited from other jurisdictions and find that they are not helpful because of differences in the statutory provisions and in the judicial systems involved.

For the reasons above expressed we conclude that petitioners' motion to strike the counterclaims was properly denied. We need not determine now whether the petition and counter-claims invoke general equitable jurisdiction so as to warrant other equitable relief.

Nor is it necessary to consider the attacks upon the answers and answers in lieu of plea, because the court below did not pass upon them, but reserved the disposal of the motions with respect thereto until the final hearing, pursuant to the practice under *Rules* 27 and 69 of the former Court of Chancery, as hereinabove noted.

The order appealed from is affirmed.

The second appeal with which we are concerned is from an order in the foregoing cause restraining the defendants from taking the deposition *de bene esse* of Walter M. Dear (hereinbefore mentioned) as a material witness pursuant to *R. S.* 2:100–10. The reason for the restraint being the Vice Chancellor's conclusion that the statute was not applicable because he found that the witness, although 71 years of age, was in good physical and mental health and there was no reasonable ground for apprehending that he would not be available to testify at the trial. We are asked to construe the aforesaid statute with reference to its applicability to the stated situation, but the question involved is now moot in view of *Rule* 3:26 which permits such examination without leave of court under the circumstances here presented.

The aforesaid order will therefore be reversed to the end that further proceedings may be had pursuant to the aforesaid rule.

In No. A–88:

*For affirmance:* Chief Justice VANDERBILT and Justices CASE, HEHER, WACHENFELD, BURLING and ACKERSON—6.

*For reversal:* None.

In No. A–57:

*For reversal:* Chief Justice VANDERBILT and Justices CASE, HEHER, WACHENFELD, BURLING and ACKERSON—6.

*For affirmance:* None.