15 N.J. Super. 58 (1951)
83 A.2d 38
IN THE MATTER OF THE APPLICATION FOR A DISSOLUTION OF THE EVENING JOURNAL ASSOCIATION. POST-STANDARD COMPANY, ET AL., PLAINTIFFS,
v.
THE EVENING JOURNAL ASSOCIATION, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided July 11, 1951.
*60 Mr. Edward J. O'Mara and Mr. Joseph A. Davis, for the plaintiffs (Messrs. O'Mara, Conway & Schumann, attorneys).
Mr. James D. Carpenter, for the defendant Dear Publication & Radio, Inc. (Messrs. Carpenter, Gilmour & Dwyer, attorneys).
Mr. John D. McMaster, for the defendant The Evening Journal Association.
Mr. Milton Rosenkranz, for the defendants J. Albert Dear and Cyrene B. Dear.
STANTON, J.S.C.
The plaintiffs seek the dissolution of the defendant The Evening Journal Association pursuant to the provisions of R.S. 14:13-15, N.J.S.A., sometimes called the Deadlocked Corporation Act. Opinions dealing with other phases of this action are reported in 1 N.J. 437 (1949), 7 N.J. Super. 360 (Ch. Div. 1950) and 5 N.J. 142 (1950); and reference is made to these to avoid repetition.
The association was incorporated in 1877 under a general act of the Legislature and the period limited for its duration was 50 years. In 1927, after the date limited for its duration had passed, its corporate existence was extended for an unlimited period pursuant to the provisions of a general legislative act.
*61 The principal business of the association is the publication of a daily newspaper known as the Jersey Journal. It owns valuable real property at Journal Square, Jersey City, part of which is used in its newspaper operation and the remainder is rented for store and office purposes.
Since January 27, 1948, no directors have been elected because no nominee has received a majority. As a result those elected on that date, namely J. Albert Dear, Cyrene B. Dear, Samuel I. Newhouse and Norman N. Newhouse have been holding over. At a directors' meeting held on July 13, 1948, Mr. Dear was elected president, Mrs. Dear vice-president, Samuel Newhouse treasurer and Norman Newhouse secretary and assistant treasurer to serve until the annual meeting of the stockholders in January, 1949, but they have been holding over ever since in the absence of an election.
The directors have been unable to agree with respect to the payment of a dividend since December, 1947, when one of $25 per share was paid.
Officers of the association have withheld the salaries of their fellow officers. During the period February, 1948, to July, 1948, Albert Dear refused to countersign the salary checks of his uncle Walter Dear then serving as treasurer. Since March, 1949, Samuel Newhouse has refused to sign the salary checks of Mr. and Mrs. Dear on the ground that Dear has violated the by-laws of the association, has acted on behalf of the association without the authority or sanction of the board of directors and has refused the Newhouse faction an equal participation with the Dear faction in the management of the association. During the same period Newhouse has not attempted to draw his salary.
Frequently it has happened that called meetings of the stockholders and directors have not been held because of the absence of a quorum. Since 1948 it has often happened that all the parties attended such meetings accompanied by their personal legal advisers who actively participated in the meetings. Some of these have been reported verbatim by certified shorthand reporters. There have been protracted and acrimonious *62 meetings at which each side accused the other of seeking to make a record for the purpose of this proceeding.
It would be difficult to discuss in detail the numerous differences between the factions which appear in the extensive testimony and voluminous exhibits, including minutes of the meetings of the stockholders, directors and the conference board, as well as correspondence between the parties and their attorneys. Probably the greatest dissension stems from the division of executive power and authority. Prior to the advent of Newhouse, the by-laws provided that the president shall be the editor of the newspaper and the treasurer shall be the general manager of the association. Pursuant to the Peace Treaty the by-laws were amended on December 24, 1945, to delete from Article XI the following provision: "The treasurer shall be the general manager of the association." This was obviously done at the instance of Albert Dear to limit the authority of his uncle Walter Dear, who was to continue as treasurer during the life of the Peace Treaty which by its terms expired on December 31, 1947. At a directors' meeting in the following January, Albert Dear blocked the re-election of Walter Dear, stopped the payment of his salary, and in effect forced his resignation in July, 1948. Immediately after he was elected treasurer Newhouse sought to restore the provision of the by-laws which would constitute him the general manager, but Albert Dear opposed the proposition then and ever since. Newhouse repeatedly urged that they return to the old plan of operation under which Albert Dear would be the editor of the newspaper and Newhouse would be the business manager of the corporation. Dear has remained adamant in his contention that as president he is the general manager of the business of the association and as editor he has exclusive control over what goes into the newspaper. He has relegated Newhouse to the position of a mere ministerial officer. Newhouse and Dear each has an absolute veto in the meetings of the stockholders and directors, but Dear by virtue of his position as president and editor assumes *63 the entire control of the day-to-day operation of the corporation and the management of its affairs.
The newspaper is financially successful. During the time with which we are concerned its circulation and advertising linage have increased. Newhouse admits this but contends that under proper management it would enjoy greater success. His view is that the Jersey Journal is merely participating in the general prosperity that is pervading the newspaper industry.
There has been serious disagreement and dissension regarding the management of the real estate. Many propositions, some of magnitude, have been considered with respect to the building which contains stores and offices. For instance, it was proposed to demolish this building, which fronts on Journal Square, and lease the ground for a long term to a tenant who would erect a building designed for its particular purpose. In this connection the association would be required to erect another building on adjacent land on Enos Place to house its editorial and business offices. This would require the investment of a very substantial sum of money and would entail considerable inconvenience. While the feasibility and soundness of this and like propositions were being considered practically all, if not all the tenants, were upset as their leases approached their expiration dates. Only short terms with cancellation clauses were favored by Dear. The real estate operation has been in constant turmoil during the past four or five years. To illustrate, the Loft Candy Company occupied one of the stores; it was regarded as a desirable tenant by both factions and it was anxious to remain for a reasonable term at a much higher rent, but due to the unsettled conditions and inability to even discuss a lease for a reasonable term, it vacated the premises in June, 1949. Its lease expired on April 30, 1948, but it had continued over for a little more than a year on a makeshift arrangement. It had no choice in the absence of stable arrangements with its landlord except to go elsewhere. Shortly afterwards Dear, over the protest of Newhouse, let the store on a month-to-month *64 basis to Natkin Outlet Stores, Inc. The rental rate was $833.33 monthly. Newhouse objected particularly to the type and character of this tenant's business. He felt its presence in the premises would cheapen the entire building. This tenant departed in April, 1950, and the store has since been vacant. The loss of income could be conservatively estimated at not less than $10,000 a year.
There has been dissension regarding the tenancy of Davega Stores Corporation. It has occupied a store in the building during many years. It desires to remain and moreover seeks additional space, namely the store formerly occupied by Loft. Its lease has expired and it has been holding over on a month-to-month basis since April 30, 1950. Negotiations with respect to its presently occupied space and also the store formerly occupied by Loft have been carried on but without success. This tenant is presently paying rent on the basis of five per cent of gross sales with a guaranteed minimum of $22,500 annually. During the year 1949, the rent received from this tenant at that rate amounted to $32,262.22. Many propositions were discussed, and to mention only one, Davega offered a minimum annual rent of $45,000 against five per cent of sales for the store it now occupies and the one formerly occupied by Loft. But the directors of the association have been unable to agree on a proposition which would afford a reasonable basis for discussion with Davega other than the present admittedly temporary one. This tenant pays very substantial rent, yet it has no security. How long will it remain under the circumstances? Is this store producing the rent that it reasonably might be expected to produce if the tenant had a lease for a term of reasonable length? Other instances of dissension over the management of the real estate and inability to agree on the position to be taken by the corporation in its dealings with its tenants and others might be cited, but the above examples will suffice.
The defendants argue that Newhouse in bad faith seeks to create the appearance of deadlock for the sole purpose of obtaining a judgment of dissolution with the ultimate intention *65 of acquiring the newspaper with its good will unimpaired. They say the differences and dissensions as regards the newspaper itself are comparatively minor; and as regards the real estate, while there is discord which causes the loss of income, it is not important when the total income from real estate is compared with that received from the newspaper business. They charged that Newhouse plans to "freeze out" the Dears and acquire entire control of the company.
Defendants have not proved bad faith on the part of the plaintiffs. They charge that they are attempting to ruin the company but not the newspaper. But where is the proof? There is resistance by plaintiffs to Dear's attempt to be the sole manager of the association, but is not that something which they may properly do? If the stockholders are impotent to elect a board of directors by reason of the equal division of the stock into two independent ownerships or interests, if the directors are equally divided respecting the management of the corporation and the president of the association and editor of the newspaper assumes to act as the sole manager, what is more natural for the ownership of one-half of the stock of the association to do than seek the remedy of dissolution? Plaintiffs have a very substantial investment in the association and they have the right to protect it.
It is difficult to understand the defendants' charge that Newhouse seeks to "freeze them out." In the event of a sale on dissolution, Newhouse would have no greater right than anyone else to purchase all or part of the assets, and Dear's rights and interests are no less than Newhouse's. There is no proof and it cannot be assumed that Dear lacks the ability to protect himself at such a sale. To the contrary is the fact that while Newhouse was testifying, his examination was interrupted by counsel for the Dear holding corporation, who, without warning or notice, read an offer for the settlement of this action. This and the colloquy which followed it may be found on pages 711 to 720 of the transcript. Among other things, it proposed a sale of the corporate stock of the parties under the direction of the court, in which competitive bidding would be limited to the Dear and Newhouse interests, *66 whereby the successful bidder would acquire all outstanding stock. This evidences confidence on the part of the Dear interests in their ability to protect themselves at such a sale. If Newhouse were to buy at such a sale, presumably he would be required to pay full value. Newhouse declined the offer and stated a preference for a sale of the association's assets open to the public. Such a sale should afford additional protection against a "freezeout" of either interest.
The proofs are abundant that there has been discord and dissension between the Dear and Newhouse factions for more than five years. Their differences are irreconcilable. Due to the equal division on the board of directors that body has been unable to control and manage the operation of the business. In the absence of action by the directors, Dear has assumed the general management of the corporation. To an extent Newhouse has tolerated this. He has resisted in some respects. But is he required to suffer control and management by the Dear half-interest indefinitely? One of the contentions of the latter is that since the operation of the business is successful it should not be disturbed. Another is that since the newspaper is published daily and is prosperous, it is to be concluded that there is no real deadlock in its management. The Dear contention seems to imply that unless the paralysis of corporate function results in the suspension or the breakdown of the ordinary business of the corporation or in financial loss, there can be no redress for the half-interest that is excluded from the management. They seem to imply also that because the Newhouse opposition and resistance to the assumption of sole control by Dear stopped short of the point where serious injury might be done to the valuable newspaper enterprise, acquiescence in the Dear conduct may be inferred. Newhouse was not required to resist Dear's arrogation of sole power by violent or even strenuous means. It would serve the interest of neither party to do anything that would tend to damage the corporation. When Newhouse concluded three years ago that there was an irreconcilable division of the stockholders and the directors respecting *67 the management of the corporation, he instituted this action. Since then this case has been removed twice to the Supreme Court on appeals from the determination of other issues and there has been inevitable delay in the disposition of the present issue. In the meantime, he has continued as treasurer of the corporation and has offered his opinion on questions of policy and management, but the general control of the business remained in Dear alone. Where concurrence was lacking Dear assumed the right to act for the corporation.
Our statute has been interpreted by the Supreme Court in the recent case In re Collins-Doan Co., 3 N.J. 382 (1949), and there it was held that dissolution should be decreed when the dissension resulted in a paralysis of corporate function At page 395 we find this language:
"In fine, where dissension among the shareholders of a corporation is such as to work a paralysis of corporate function, the sovereign power whence the franchise came has an interest that will sustain its intervention for the dissolution and liquidation of the corporation. And it may intervene, too, for the protection of shareholders. Certainly, dissolution was within the contemplation of the shareholders here if differences arose which could not be composed. This is the principle of the statutory provision invoked here. The act is designed to operate where there is `a stalemate in corporate management.' In re Evening Journal Association, 1 N.J. 437 (1948). The power proceeds from the same source and has the same quality as that exerted against insolvent corporations and those in default in the payment of the franchise tax. The act itself suggests the legislature deemed the subject matter of public concern."
Hence the test is not whether routine business is carried on or not, or whether business is being conducted at a profit or a loss, but whether there is a paralysis of corporate function.
And at page 396, Mr. Justice Heher made this statement, which in the light of the proofs in this case is entirely apropos:
"In the case at hand, there is a want of that community of interest essential to corporate operation. Dissolution will serve the interests of the shareholders as well as public policy. The interests of the shareholders are so discordant as to preclude efficient management for the welfare of all, not to mention the complete lack of direction in the corporate form. It would seem that this particular *68 statutory provision for dissolution is but a declaration of a power existing at common law. And, if the statutory authority be deemed discretionary in essence, there is no ground for withholding its affirmative exercise here, for there is no alternative corrective remedy. Redress for the corporate omissions may be had only by dissolution. The dissension is such as to defeat the end for which the corporation was organized. The deadlock in the corporation's internal management is fatal to its existence."
Defendants cite various decisions of the New York courts, of which In re Brewer-Cantelmo Co., Inc., 275 App. Div. 231, 88 N.Y.S.2d 604 (1949) may be said to be typical, which hold that a judgment of dissolution of a deadlocked corporation may be had only where it appears that such dissolution will be beneficial to the stockholders. Such decisions have no applicability here because they are predicated on the following language in section 117 of the General Corporation Law which has no counterpart in the statutes of our State: "if upon the application for the final order, it shall appear that the case is one specified in this article and that a dissolution will be beneficial to the stockholders or members and not injurious to the public, the court must make a final order dissolving the corporation."
Defendants contend that R.S. 14:13-15 would unconstitutionally impair the contractual rights of the defendants if construed to be applicable to the defendant corporation so as to warrant its dissolution under the facts of this case. They concede that the Legislature may make fundamental changes affecting the contractual rights of the stockholders inter se, where and insofar as the public interest requires, but argue that to permit a dissolution here on the petition of holders of only one-half of the corporate stock would violate the rights of non-consenting stockholders, because at the time of the formation of the corporation and of the extension of its corporate life the law prescribed a majority vote of the directors and an affirmation by two-thirds of all the stockholders as a requisite for voluntary dissolution. But this begs the question. This is not a case where plaintiffs seek a voluntary dissolution. Rather they ask that the corporation be dissolved *69 in the public interest because the dissension among the stockholders is such as to work a paralysis of corporate function. And it is now settled that where a corporation is unable to function in the manner ordained by law, public policy as manifested in the statute requires its dissolution. In re Collins-Doan Co., supra; R.K.O. Theatres v. Trenton-New Brunswick Theatres Co., 9 N.J. Super. 401 (Ch. Div. 1950).
In its brief, defendant Dear Publication & Radio, Inc., urges that the petition be dismissed for the reason that Post-Standard Company did not authorize its filing and prosecution. Mr. and Mrs. Dear adopt this argument in their brief. The contention is that in the absence of a resolution of the corporate plaintiff the petition was filed without its authority. The petition, filed on March 23, 1948, was signed on behalf of the corporate plaintiff by Newhouse as proxy. These defendants failed to plead their present contention in their answers. The pretrial order signed by these defendants on September 29, 1949, by agreement limited the trial to the issues set forth therein and this contention is not embraced in any of them. On the trial of the counterclaim, in the course of two appeals and in the trial of the main issue just concluded this question was not raised.
It is conceded that Newhouse owns the entire common stock of the corporation which publishes the Staten Island Advance and it in turn owns the entire capital stock of the plaintiff corporation. The preferred stock of the Advance, which is non-voting, is owned by members of Newhouse's family.
In their reply brief plaintiffs argue that this claim relates to a matter of form only and assert that if there had been timely objection, appropriate correction of the petition could and would have been made and proof presented as to the authority of Newhouse to act for the corporate plaintiff.
The argument of the Dear interests is based on evidence adduced in the pretrial examination of Newhouse and Ernest L. Owen, president of plaintiff corporation, on August 3, 1949. If these defendants intended to make an issue of the alleged deficiency, orderly procedure and regard for the spirit *70 of the new pretrial practice would require that the matter be presented at the pretrial conference for appropriate action. The following quotation from the opinion of Mr. Justice Case in Jenkins v. Devine Foods, Inc., 3 N.J. 450, at 458 (1950) is apposite:
"Our Rule 3:16 was framed upon Federal Rule 16; but our rule makes the pre-trial conference mandatory whereas the federal rule leaves it within the discretion of the court. Each rule states that one of the objectives is the simplification of the issues. The comments published with the widely-circulated tentative draft of our rules preliminary to final redraft and adoption noted that `the pre-trial order not only recites the action taken at the conference, but limits the issues,' citing in support Burton v. Weyerhaeuser Timber Co., D.C. 1 F.R.D. 571, 4 F.R.S. 319, and that comment reflects our view. `The purpose of the pre-trial conference is to simplify the issues, amend the pleadings where necessary, and to avoid unnecessary proof of facts at the trial.' McDonald v. Bowles, 152 F.2d 741 (Circ. Ct. of Appeals, Ninth Circ. 1945). A court should give no instruction to the jury which would nullify the effect of a pre-trial order or be inconsistent with the issues as framed in such order. Cf. Bryant v. Phoenix Bridge Co., 43 Fed. Supp. 162 (Dist. Ct., District of Maine, S.D., 1942). The participants in a pre-trial conference should adhere to the spirit of that procedure and be held to waive questions not there presented. Frank v. Giesy, 117 F.2d 122 (Circ. Ct. of Appeals, 9th Circ., 1941). Modification may be had at the trial to prevent manifest injustice, but the modification should be by direction and not by indirection. Full effect was not given to the pre-trial order."
There was a waiver by these defendants of the question and the merits of it will not be considered at this time. Mead v. Wiley Methodist Episcopal Church, 4 N.J. 200 (1950); Anderson v. Modica, 4 N.J. 383 (1950).
Before leaving this question, it might be noted that consistency has not been regarded by the Dear faction inasmuch as it caused an answer and counterclaim to be filed in this very action on behalf of the association without the direction or approval of its directors.
A motion was made pendente lite by the Dear faction for an order directing Samuel Newhouse and Norman Newhouse to join with the remaining director in declaring forthwith a dividend for 1948 of $60 per share or such other amount as *71 the court might deem proper, and regular quarterly dividends thereafter equal to at least 50 per cent of the net profits, and requiring the officers to pay such dividends promptly. A like motion was made for an order requiring the Newhouses to pay forthwith to Mr. and Mrs. Dear their unpaid salaries. These motions were resisted and the following unreported memorandum was filed by the court:
"The application of defendants for the declaration of a dividend is one fraught with such complications and consequences that it may not be effectively considered in a summary manner on ex parte affidavits. Further, the failure of the directors to declare a dividend is probably another manifestation of the inability of the evenly divided Board of Directors to agree on the management of the association's affairs.
The failure of the officers to sign checks for the salaries of their fellows admittedly arises out of the dissension that exists among the directors.
Inasmuch as the trial of the main case will be held within a very short time, the applications for orders directing the declaration of a dividend and the payment of officers' salaries will be continued until then. In the meantime, consideration should be given to the thought that perhaps the counterclaims should be amended."
The counterclaims have not been amended and no motion was made to that end. Nor has there been any motion to amend the pretrial order. So that the demands for the declaration and payment of dividends and the payment of salaries to the Dears are predicated on pendente lite motions. At the conclusion of the trial, counsel renewed the above motions, in fact the salary motion was broadened to include payment to all officers, they were again resisted and it was concluded that they should be argued on the entire record in the briefs to be submitted on the main issue.
Equity has the power in an appropriate case to order the declaration and payment of a dividend on stock of a corporation but it is a power exercised with great caution. There are only two reported cases in New Jersey where the payment of a dividend was decreed and in each of these majority shareholders in control of the board of directors refused to pay dividends and appropriated excessive salaries *72 to themselves to the detriment of the minority stock interest. Laurel Springs Land Co. v. Fougeray, 50 N.J. Eq. 756 (E. & A. 1893); Lawton v. Bedell, 71 A. 490 (Ch. 1908). Here the situation is different. One group of stockholders has not benefited over the others. The profits, which were available for dividends, have not been diverted to those in control of the corporation at the expense of the remaining stockholders. Therefore whether or not the Newhouse faction refused to declare dividends in the exercise of honest discretion need not be determined in view of the conclusion that the association should be dissolved.
As regards the payment of salaries, this Division of the court has jurisdiction to order the same upon the proper presentation of the issue. The proofs are clear that the salaries of Mr. and Mrs. Dear were fixed by the unanimous action of the directors and they have been engaged in the performance of the services required by their offices. No satisfactory reason has been shown why they should not be paid. However, a judgment of this Division can not go beyond the issues raised by the pleadings except to the extent that the pleadings may be amended by the pretrial order. Scott v. Stewart, 2 N.J. 508 (1949). Therefore, upon appropriate amendment of the pleadings, judgment may be entered directing the payment of the salaries of Mr. and Mrs. Dear from February 27, 1949, at the rate fixed in the resolution of the directors adopted on July 13, 1948, upon the condition, however, that the salary of Newhouse from the same date and in the amount fixed in the same resolution be paid to him.