See publication Words and Phrases, for other judicial constructions and definitions of "Condemnation" and "Requisition".

**DEAR PUBLICATION & RADIO, INC.,** a New Jersey Corporation, Petitioner-Appellant

v.

**COMMISSIONER OF INTERNAL REVENUE.**

No. 12926.

United States Court of Appeals Third Circuit.

Argued Oct. 20, 1959.

Decided Feb. 8, 1960.

John D. McMaster, Jersey City, N. J. (James F. Watson, on the brief), for appellant.

Joseph Kovner, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Meyer Rothwacks, Attorney, Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before GOODRICH and KALODNER, Circuit Judges and WOOD, District Judge.

KALODNER, Circuit Judge.

Is the sale of stock of a corporation pursuant to a state "deadlock" statute providing for its dissolution in the event of a stalemate between equally divided directors and stockholders, a "requisition" or "condemnation" within the meaning of Section 112(f) of the Internal Revenue Code of 1939, as amended?[1]

The question, of first impression, is presented by this petition for review of the Decision of the Tax Court of the United States which answered it in the negative.

The facts pertinent to the issue may be summarized as follows:

I. 26 U.S.C.1952 ed., Sec. 112.

At the times critical here, petitioner, Dear Publication & Radio, Inc.,[2] a New Jersey corporation ("taxpayer") and Post-Standard Company,[3] a New York corporation ("Post-Standard") each owned 50 per cent of the capital stock of The Evening Journal Association, a New Jersey corporation ("Association") which published The Jersey Journal, a daily newspaper in Jersey City, New Jersey. Association had four directors, two chosen by taxpayer and two by Post-Standard. They were unable to agree with respect to the management of Association and a stalemate resulted. In 1948, Post-Standard brought suit in the Superior Court of New Jersey to dissolve and liquidate Association under the New Jersey "deadlock" dissolution statute, (New Jersey General Corporation Law, Title 14, Revised Statutes 14:13–15, N.J.S.A.). After prolonged litigation the Superior Court of New Jersey in July, 1951,[4] rendered its opinion in which it held that Association's petition for dissolution should be granted, and that a receiver be appointed by the court to sell its assets.

Prior to the entry of the court's judgment, taxpayer and Post-Standard entered into a competitive bidding agreement whereby each agreed to bid for the other's 50 per cent stock interest in Association. At an auction which followed in October, 1951, taxpayer's stock interest was bid in by Post-Standard for $2,310,000. Payment was made several days later, and the stock assigned. Subsequently, the action in the Superior Court of New Jersey was dismissed on application of the parties. Thereafter, taxpayer used the proceeds of the sale of its stock to purchase other newspaper properties and in its income tax for the fiscal year in question (1952) did not report its gain from the sale of its stock in Association. It so acted on its theory that such sale, under the circumstances recited, was an "involuntary conversion" within the meaning of Section 112(f) of the 1939 Code. The Commissioner, however, disagreed. He determined that there was a net long-term capital gain on the sale in 1952 of $1,546,719.98 [5] and assessed a deficiency of income tax in the amount of $402,155.94. The Tax Court agreed with the Commissioner.[6] In doing so it specifically rejected taxpayer's contention that the sale of its stock was an "involuntary conversion" and held it was not made "under threat or imminence of requisition or condemnation" within the meaning of Section 112 (f) of the 1939 Code.[7] In doing so it stated:

"Under the New Jersey statute, the court is merely empowered to decree the dissolution of a corporation where the management and ownership is equally divided and in disagreement. In such a situation, there is no taking by governmental authority, much less a taking for public purposes. There was no threat or imminence of a requisition in the instant case."

The sum of taxpayer's contention here is that the Tax Court erred in holding that there was no "requisition" or "condemnation" of its property by virtue of a dissolution under the New Jersey "deadlock" statute because there did not result a "taking" for "public purposes", since, it says (1) a "requisition", within

---

2. Dear Publication & Radio, Inc. is wholly owned by J. Albert Dear.

3. Post-Standard Company is controlled by Samuel I. Newhouse.

4. Post-Standard Co. v. Evening Journal Ass'n, Ch.Div.1951, 15 N.J.Super. 58, 83 A.2d 38. As to earlier phases of the litigation see 1 N.J. 437, 64 A.2d 80 (1949) and 7 N.J.Super. 360, 71 A.2d 158 (Ch.Div.), affirmed In re Evening Journal Ass'n, 1950, 5 N.J. 142, 74 A.2d 303.

5. The cost basis of taxpayer's stock was $406,490.30.

6. 1959, 31 T.C. 1168.

7. The Commissioner makes no point here that the sale was made on the agreement of the parties following the filing of the court's opinion that dissolution should take place, and not by virtue of a judicial decree.

the meaning of Section 112(f), does not require a taking for "public use", and, (2) the judgment of the New Jersey court dissolving Association would have resulted in the "condemnation" of its stock interest and "hence the threat of such condemnation brings this case within the provisions of Section 112(f)."

We cannot subscribe to taxpayer's contention.

The New Jersey "deadlock" statute [8] provides for a dissolution of a corporation by judicial decree where its evenly divided directors and voting stockholders "are equally divided respecting the management of its affairs."

In RKO Theatres, Inc. v. Trenton-New Brunswick Theatres Co., Ch.Div.1950, 9 N.J.Super. 401, at page 409, 74 A.2d 914, at page 918 it was said:

"  *   *   *   Succinctly defined, a deadlocked corporation is one which, because of decision or indecision of stockholders, cannot perform its corporate powers. * * *"

and at page 410 of 9 N.J.Super., at page 918 of 74 A.2d:

"From the point of view of the public interest, the incapacity of the corporation to function transcends in importance the suspicions, apprehensions, and animosities which divide and motivate the stockholders.

*   *   *  If this corporation is unable to function in the manner ordained by law, public policy as exhibited by the statute requires its dissolution."

Earlier, the Supreme Court of New Jersey in In re Collins-Doan Co., 1949, 3 N.J. 382, at page 395, 70 A.2d 159, at page 166, 13 A.L.R.2d 1250, in discussing the "deadlock" statute said:

"In fine, where dissension among the shareholders of a corporation is such as to work a paralysis of corporate function, the sovereign power whence the franchise came has an interest that will sustain its intervention for the dissolution and liquidation of the corporation. And it may intervene, too, for the protection of shareholders. Certainly, dissolution was within the contemplation of the shareholders here if differences arose which could not be composed. This is the principle of the statutory provision invoked here. The act is designed to operate where there is 'a stalemate in corporate management.' In re Evening Journal Association, 1 N.J. 437 [64 A.2d 80, 83]. (1948) The power proceeds from the same source and has the same quality as that exerted against insolvent corporations and those in

8. The New Jersey statute provides as follows:

"Every corporation organized under Title 14 of the Revised Statutes may be dissolved by the judgment of the Superior Court when it is made to appear that the corporation has an even number of directors who are equally divided respecting the management of its affairs, and that the voting shares of such corporation are equally divided into two independent ownerships or interests and one-half thereof is owned or controlled by persons favoring the course or views of part of the directors, and one-half is owned or controlled by persons favoring the course or views of the other directors, or that the persons owning or controlling the voting shares are unable to agree on, or vote for, the election of a board of directors consisting of an uneven number, and, in either such event, the holders of shares entitling them to exercise one-half or more of the voting power shall have voted for such dissolution, or shall have agreed in writing thereto, or shall join in applying for dissolution. The application for dissolution may be made in an action brought by one-half of the directors when there is an even number of directors who are unable to agree as to management, if the holders of one-half or more of the shares have voted for or agreed in writing to such dissolution, or it may be made in an action brought by the persons holding one-half of the voting shares when such persons are unable to agree with the persons holding the other half of such shares as hereinabove provided. *   *   *

"The provisions of chapter thirteen of Title 14 of the Revised Statutes shall be applicable hereto, except so far as they be inconsistent with the provisions hereof."

default in the payment of the franchise tax. The act itself suggests the legislature deemed the subject matter of public concern."

and at page 396 of 3 N.J., at page 166 of 70 A.2d:

"In the case at hand, there is a want of that community of interest essential to corporate operation. Dissolution will serve the interest of the shareholders as well as public policy. The interests of the shareholders are so discordant as to preclude efficient management for the welfare of all, not to mention the complete lack of direction in the corporate form. It would seem that this particular statutory provision for dissolution is but a declaration of a power existing at common law. And, if the statutory authority be deemed discretionary in essence, there is no ground for withholding its affirmative exercise here, for there is no alternative corrective remedy. Redress for the corporate omissions may be had only by dissolution. The dissension is such as to defeat the end for which the corporation was organized. The deadlock in the corporation's internal management is fatal to its existence."

The foregoing cases make it clear that the "deadlock" statute operates in the public interest and as a matter of public policy to terminate via the dissolution process a stalemate which has paralyzed the functioning of the corporation. Otherwise stated, the dissolution is a judicial resolution of a "stalemate in corporate management" because of the public interest and "the protection of shareholders".

That the principles stated were applied by the Superior Court of New Jersey in its ruling that Association should be dissolved (Post-Standard Co. v. Evening Journal Ass'n, Ch.Div.1951, 15 N.J. Super. 58, 83 A.2d 38), is evident from its statement at page 69 of 15 N.J.Super., at page 43 of 83 A.2d that:

"* * * it is now settled that where a corporation is unable to function in the manner ordained by law, public policy as manifested in the statute requires its dissolution. * * *"

The proceedings under the "deadlock" statute are in a court of equity in New Jersey.[9] Such a court has inherent jurisdiction, when circumstances warrant, to settle the affairs of a corporation, liquidate its assets, pay claims and distribute the balance to its stockholders.[10] The dissolution of a corporation does not terminate stockholders' "property right in the assets" of the corporation, Bijur v. Standard Distilling & Distributing Co., 1908, 74 N.J.Eq. 546, 557, 70 A. 934, 939, affirmed 1911, 78 N.J.Eq. 582, 81 A. 1132. There is no element of the exercise of sovereign powers of "requisition" or "condemnation" in a judicially decreed dissolution of a corporation under the "deadlock" statute. Nothing tangible inures to the sovereign, the forfeiture of the corporate franchise via dissolution gives nothing to it. Indeed, the sovereign is not a party to the litigation under the statute which eventuates in the dissolution, nor is it empowered by the statute to be a party. The statute by its plain and specific terms provides for "The application for dissolution * * * in an action brought by one-half of the directors * * * or * * * in an action brought by the persons holding one-half of the voting shares * * *."

Moreover, it is the conduct, viz., disagreement, of evenly divided directors and evenly divided stockholders, which is the premise of the application for dissolution permitted by the statute and only their further action which can initiate the dissolution litigation.

9. In the Matter of Application for Dissolution, 1949, 1 N.J. 437, 64 A.2d 80.

10. Freidus v. Kaufman, Ch.Div., 35 N.J. Super. 601, 114 A.2d 751, affirmed App. Div.1955, 36 N.J.Super. 321, 115 A.2d 592; In re New Jersey Refrigerating Co., E. & A.1923, 95 N.J.Eq. 215, 122 A. 832.

In the instant situation, the "deadlock" statute was invoked by Post-Standard because of the "discord and dissension" between it and taxpayer "for more than five years". The Superior Court of New Jersey in its opinion deciding that dissolution should ensue found that taxpayer's "arrogation of sole power" in the functioning of Association was ample warrant for the exercise of its power to direct such dissolution.

What has been said makes it clear that there was no "involuntary conversion" of taxpayer's property by reason of its "requisition or condemnation or threat or imminence thereof" within the meaning of Section 112(f) so as to justify taxpayer's invocation of the "Nonrecognition of Gain" provisions of the section.

Section 112(f) [11] does afford a tax-free sale where there is an "involuntary conversion" by reason of "Requisition or condemnation or threat or imminence thereof" but "requisition" or "condemnation" must be construed in the statutory context.

The circumstances present in the instant case were not sufficiently close to the type of thing ordinarily meant by "requisition" and "condemnation" so as to bring into play the relevant provisions of Section 112(f).[12]

We are of the opinion that the "Nonrecognition of Gain" provisions of Section 112(f) are applicable only where there is an "involuntary conversion" wholly beyond control of the one whose property has been taken. The taxpayer's conduct here, as was found by the Superior Court of New Jersey in deciding on dissolution of Association, was the premise of the dissolution. Its situation is analogous to one whose non-compliance

11. Section 112(m) provides in part:
    "§ 112. Recognition of gain or loss—
    "(a) *General rule.* Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.
    \*   \*   \*   \*   \*
    "(f) [as amended by Sec. 1, Act of October 31, 1951, c. 661, 65 Stat. 733] *Involuntary Conversion.*—If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted—
    "(1) *Conversion into similar property.* Into property similar or related in service or use to the property so converted, no gain shall be recognized.
    "(2) *Conversion into money where disposition occurred prior to 1951.* \* \* \* For the purposes of this paragraph and paragraph (3), the term 'disposition of the converted property' means the destruction, theft, seizure, or requisition, or condemnation of the converted property, or the sale or exchange of such property under threat or imminence of requisition or condemnation.
    "(3) *Conversion into money where disposition occurred after 1950.* Into money or into property not similar or related in service or use to the converted property, and the disposition of the converted property (as defined in paragraph (2)) occurred after December 31, 1950,

the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph:
    "(A) Nonrecognition of Gain. If the taxpayer during the period specified in subparagraph (B), for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, or purchases stock in the acquisition of control of a corporation owning such other property, at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or more taxable years) exceeds the cost of such other property or such stock. \* \* \*" 26 U.S.C.1952 ed., Sec. 112.

12. See Mitsubishi Shoji Kaisha Ltd. v. Societe Purfina Maritime, 9 Cir., 1942, 133 F.2d 552, 555, certiorari denied 1943, 318 U.S. 781, 63 S.Ct. 858, 87 L.Ed. 1148; Fletcher v. Maupin, 76 U.S.App. D.C. 63, 129 F.2d 46, 49, certiorari denied 1942, 317 U.S. 680, 63 S.Ct. 161, 87 L. Ed. 545; Filbin Corporation v. United States, D.C.E.D.S.C.1920, 266 F. 911, 913; cf. Gillette Motor Transport, Inc. v. Commissioner, 5 Cir., 265 F.2d 648, certiorari granted 1959, 361 U.S. 881, 80 S. Ct. 151, 4 L.Ed.2d 118; Midwest Motor Express, Inc. v. Commissioner, 8 Cir., 251 F.2d 405, certiorari denied 1958, 358 U.S. 875, 79 S.Ct. 116, 3 L.Ed.2d 105.

with the terms of his mortgage obligation results in the foreclosure of his property. It has been held that such a mortgage foreclosure is not a "requisition or condemnation". Cooperative Pub. Co. v. Commissioner, 9 Cir., 1940, 115 F.2d 1017, 1021.

For the reasons stated the Decision of the Tax Court of the United States will be affirmed.