THE R. & M. PROPERTY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61022.   Promulgated December 23, 1932.

*James O. Tripp, Esq.*, for the petitioner.
*L. M. Leinenkugel, Esq.*, for the respondent.

438

OPINION.

MURDOCK: The petitioner contends that it exchanged real estate for other real estate and the transaction is nontaxable under the provisions of section 112 (b) (1) of the Revenue Act of 1928. It argues that the nontaxable character of the exchange is not affected by the fact that in the same transaction it transferred stock and cash, assumed an increased mortgage liability and received the benefit of some adjustments. Section 112 (a) of the Revenue Act of 1928 states, as a general rule, that upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized. Subdivision (b) of section 112 provides for certain exceptions and is in part as follows:

(b) *Exchanges solely in kind.*—

(1) PROPERTY HELD FOR PRODUCTIVE USE OR INVESTMENT.—No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.

The petitioner argues that the word "solely," as used above, refers only to the property received in the exchange. In this it may be right (see subdivisions (c), (d), and (e)), but we need not decide that question here, for the Commissioner has not recognized any gain upon the exchange of the real estate in Columbus.

However, in the same transaction the petitioner also exchanged stock. Stock is expressly excluded from the exception contained in section 112 (b) (1). If stock were exchanged solely for real estate, the entire amount of the gain or loss would be recognized. The gain or loss would be the difference between the basis for the property exchanged and the fair market value of the property received. Sec. 111. The parties agree that the basis for the stock in question was $2,121.59. We see no reason why the gain or loss upon the exchange of this stock should not be recognized in this case. The only difficulty would be to determine the fair market value of the property received for the stock. If the various items were properly valued by

the parties in their agreement, the petitioner has not been overtaxed, for the petitioner received in the exchange the full market value of the stock. The Commissioner has reduced this value by the basis and has also further reduced it by an adjustment of $886.69 which benefits the petitioner and is not fully explained in the record. The petitioner argues, however, that the values at which the properties were exchanged were not true market values, but were inflated values. It alleges that the fair market value of the Detroit property was $200,000. In attempting to support this allegation, Ross testified that the petitioner's equity in the Columbus real estate amounted to $4,000 only, instead of $35,000, as mentioned in his letter and recognized in the final settlement. He and Moores had been advised that the petitioner could dispose of its Borden Company stock in this exchange tax-free, whereas a sale would involve a 12½ per cent tax on the profit. Therefore, he said they considered that in this transaction the stock represented an expenditure by the petitioner of only $87,000, instead of $99,725, its fair market value. He testified further that he had heard of a sale of property on Grand River Avenue in Detroit for $3,000 a front foot. This property was within 100 feet of the property which the petitioner had acquired and was improved with a two-story building. He, therefore, multiplied the frontage of the petitioner's property by $3,000, added $40,000 as the value of the building, and arrived at $214,000, which he said would be, apparently, the value of the property. Even with the adjustments claimed, the petitioner paid far more than this amount for the property. Ross' testimony did not indicate that he had any other knowledge of the value of the property which the petitioner had acquired. He admitted that he had no special qualifications for the valuation of real property. Obviously, the petitioner has not shown that the fair market value of the Detroit property was $214,000. Neither do we feel justified in using any other value for this property in the decision of this case than $275,000, the figure agreed upon and used by the parties in a transaction which, so far as we know, was carried out at arm's length.

If, however, we were wrong in using this value of $275,000, the Commissioner would not necessarily be wrong in his determination of the amount of gain to the petitioner from the disposition of the Borden Company stock. If the properties were put in at inflated values, the Commissioner's determination might nevertheless be right if the amount of inflation in the value of the Detroit property did not exceed the amount of inflation in the Columbus property. If there was some excess of this kind, the Commissioner's determination would require adjustment. The problem of making such an adjustment need not be solved until it arises.

*Decision will be entered for the respondent.*