ETHEL M. WARDA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Warda v. Commissioner
Docket No. 9186-82.
United States Tax Court
T.C. Memo 1985-601; 1985 Tax Ct. Memo LEXIS 34; 51 T.C.M. (CCH) 77; T.C.M. (RIA) 85601; December 10, 1985. Ethel M. Warda, pro se. Pamela R. Martin, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: In a statutory notice of deficiency dated March 25, 1982, respondent determined deficiencies in petitioner's Federal income tax liabilities, and additions to tax, as follows: Additions to Tax
Year
Deficiencies
I.R.C. Section 6653(a) [1]
1978
$7,990.63
$399.53
1979
25,527.48
1,276.37
1980
38,973.22
1,948.66
The issues for decision are: (1) Whether certain payments of interest and dividends, and capital gains realized from the sale of stock and real property are taxable income to petitioner; (2) whether petitioner is entitled to deduct farm expenses in excess of those allowed by respondent; and (3) whether petitioner is liable for additions to tax for negligence under section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated *36 and are found accordingly. Petitioner resided in Berrien Springs, Michigan, at the time the petition herein was filed. Petitioner is an elderly woman whose primary sources of income during the years in issue were interest and dividend payments she received on corporate and government securities she held, and proceeds she received on the sale of her stock holdings. At issue herein are unreported interest payments petitioner received on bonds she owned that were issued either by foreign governments or by transportation companies located in the United States. Petitioner also did not report on her Federal income tax returns for the years in issue certain corporate dividends that she received and capital gains she realized upon the sale of certain of her stock holdings. The proceeds of the stock sales apparently were deposited directly to her brokerage account and were used by her broker to purchase other securities on her behalf. In 1980, petitioner also did not report the capital gain she realized incident to an installment sale of real property which she owned (hereinafter referred to as "the Buchanan house"). Petitioner received four installment payments in 1980 totaling $800 *37 before she commanced foreclosure proceedings against the buyer of the Buchanan house. Respondent determined that petitioner had failed to report on her 1980 Federal income tax return $687 of the sales proceeds on the sale of the Buchanan house which respondent determined was taxable to petitioner as capital gain. By her own concession, petitioner received the following amounts of interest, dividends, and capital gain, as referred to above, which she did not include in gross income on her 1978, 1979, and 1980 Federal income tax returns: Interest
Dividend
Capital
Year
Income
Income
Gain
Total
1978
$13,223
$533
$1,639
$15,395
1979
38,910
8,076
837
47,823
1980
48,378
5,436
17,641
71,455
Petitioner also participated with her son in a farming operation, and she deducted on her Federal income tax returns for the years in issue numerous expenses she contends were incurred in connection therewith. Petitioner, however, provided no documentation to substantiate any of those expenses beyond the amounts allowed by respondent. Respondent did allow petitioner additional deductions, previously unclaimed by her, for charitable contributions, interest *38 expenses, and miscellaneous expenses. A listing of the farm expenses, charitable contributions, interest expenses, and miscellaneous expenses deducted by petitioner and allowed by respondent follows: 1978
1979
1980
Amounts
Amounts
Amounts
Deducted
Allowed
Deducted
Allowed
Deducted
Allowed
By P
By R
By P
By R
By P
By R
Schedule A
Taxes
$ 9,020
$ 8,418
Contributions
$ 250 $ 33 295
46
Interest
125 920
2,383
Miscellaneous
179 49 4,565
1,601
Schedule F
Labor
$ 997 $ 958 Repairs
736 1,857 Seeds
250 Fertilizer
600 300 Supplies
821 1,046 3,701
Fuel
814 987 Taxes
7,725 7,765 8,820 9,178 9,020
Insurance
380 397 Utilities
400 413 Land Clearing
300 Machine hire
850 Miscellaneous
945
Contributions
295
Depreciation
500 500 250 Rental Income
(1,500)
(1,500)
(2,000)
(2,000)
Totals
$12,023 $6,694 $14,128 $7,635 $28,761
$12,448
Amounts in
Controversy
$5,329
$6,493
$16,313
Trial of this case was held in Detroit, Michigan, *39 on October 15, 1984, wherein documentary evidence and stipulations of fact were submitted by the parties and petitioner testified on her own behalf. OPINION Section 61 defines gross income as all income from whatever source derived, including interest and dividends. Income is excludable from gross income only if so provided by other sections of the Internal Revenue Code. Section 103 specifically excludes from gross income interest earned on "the obligation of a State, a Territory, or a possession of the United States, or any political subdivision of any of the foregoing, or of the District of Columbia * * *." Sec. 103(a). [2] Petitioner argues that the interest she concededly earned on bonds that were issued by the governments of various foreign nations is tax exempt because those foreign nations properly may be characterized as "territories" within the intent of section 103(a). *40 Respondent argues, and we agree, that petitioner misunderstands the obvious meaning of section 103 which exempts from tax interest earned on obligations issued only by Territories (or States, municipalities, or political subdivisions thereof) of the UnitedStates. The interest-bearing bonds which petitioner held were issued by the foreign governments of Mexico, Finland, and Australia, among others, and clearly are not obligations that were issued by a Territory of the United States. Therefore, we sustain respondent's determination that petitioner must include in income interest payments attributable to those foreign government bonds. Petitioner also contends that interest she earned on bonds issued by certain railroad and aircraft companies is tax exempt. Section 103(b) does exempt from taxation interest earned on certain industrial development bonds issued by the authority of a state or other political body the proceeds of which are used to provide, among other things, airports and mass commuting facilities. Sec. 103(b)(4)(D). [3] Petitioner, however, introduced no evidence on *41 this issue, and we are unable to ascertain from the record herein the purposes for which the bonds were issued and whether they qualify for tax-exempt status under section 103(b)(4)(D). We sustain respondent's determination that petitioner is not entitled to exclude from income any amount of interest earned by her during the years in issue on foreign government or corporate bonds. Petitioner concedes that she received dividends from various corporations which she failed to include in her gross income during the years in issue, and she presented no valid argument for exclusion of the dividend income. Petitioner does contend that in 1980 she did not own stock in one of the corporations, MGM Grand Hotels, Inc., from which respondent *42 determined she had received a dividend, even though the corporation had filed an information return with the Internal Revenue Service showing payment to her of a $700 dividend. Petitioner submitted into evidence, however, a letter to her from The Chase Manhattan Bank, N.A., agent for MGM Grand Hotels, which states that she was not a shareholder of MGM Grand Hotels during 1980, and therefore did not receive any funds distributed therefrom. In our view, that letter is sufficient evidence to overcome the presumption of correctness in favor of respondent on this issue. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. We conclude that petitioner did not receive a dividend in any amount from MGM Grand Hotels in 1980. We sustain respondent's determination, however, with respect to the inclusion in gross income of all other unreported dividends in question herein. Petitioner acknowledges that she realized capital gains on the sale of certain stocks during the years in dispute, which she failed to include in gross income on her Federal income tax returns. Apparently, petitioner also agrees that respondent's calculation *43 of those gains is correct. As far as we can tell from her testimony, petitioner contends that those capital gains were realized when certain of the corporations in which she held stock were reorganized and that she received distributions in liquidation therefrom. Petitioner argues that those gains are nontaxable involuntary conversions under section 1033 because they were the result of a forced sale of her stock over which she had no control. Petitioner also argues that because the proceeds of the distributions were deposited directly to her brokerage account and were reinvested in other securities on her behalf, she participated in a nontaxable like-kind exchange under section 1031. There clearly is no merit in petitioner's arguments. An involuntary conversion, as contemplated by section 1033(a), is occasioned by the destruction of property in whole or part, the theft, seizure, requisition, or condemnation of property, or the threat or imminence of requisition or condemnation of property. That definition in no way contemplates the disposition of stock in the manner that occurred in this *44 case. See Hitke v. Commissioner,296 F.2d 639 (7th Cir. 1961), affg. a Memorandum Opinion of this Court; Dear Publication & Radio, Inc. v. Commissioner,31 T.C. 1168 (1959), affd. 274 F.2d 656 (3d Cir. 1960). Moreover, section 1031 is specifically inapplicable to any exchange of "stocks, bonds, or notes." Sec. 1031(a)[4]; R. & M. Property Co. v. Commissioner,27 B.T.A. 436, 438 (1932). Petitioner also concedes that she realized capital gain on the installment sale of *45 the Buchanan house, which she failed to include in her gross income for the year in which it sold. Petitioner explained that she did not believe she had realized any gain on the sale of the Buchanan house because she had received only $800 of the $5,000 purchase price. Respondent calculated the percentage of gain petitioner would have realized had she been paid the full purchase price and applied that percentage to the amount of sales proceeds petitioner did receive to determine the amount of each installment payment that represented gain to petitioner [85.8 percent times $800 equals $687]. The gain realized on the sale of the Buchanan house is, of course, taxable to petitioner. Eisner v. Macomber,252 U.S. 189 (1920). We sustain respondent's determination with respect thereto. Therefore, petitioner must include in gross income the capital gains she realized on the sale of her stocks and on the sale of the Buchanan house during the years in issue as reflected in the statutory notice of deficiency herein. Respondent disallowed for lack of substantiation certain expenses that petitioner contends were incurred in connection with her farm. At trial, petitioner *46 testified in a vague manner about those deductions, but failed to provide documentary evidence of any sort to verify the expenses she deducted. Petitioner's mere assertion that the farm expenses properly were claimed on her returns falls short of the full disclosure of facts that is necessary to substantiate the deductions she claims. Davis v. Commissioner,674 F.2d 553, 554 (6th Cir. 1982), affg. a Memorandum Opinion of the Court; Wilkinson v. Commissioner,71 T.C. 633, 639 (1979); Belser v. Commissioner,10 T.C. 1031, 1042 (1948), affd. 174 F.2d 386 (4th Cir. 1949). Petitioner bears the burden of establishing both her right to and the amount of a deduction, New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934), but she failed to introduce any evidence to show that respondent erred in his disallowance of those deductions. Complicating matters further, petitioner's son apparently reported the income of the farm on his Federal income tax returns, and we have no way of knowing whether the farm expenses at *47 issue herein also were deducted on his returns. In light of the lack of proof by petitioner on this issue, we sustain respondent's determination with respect thereto. Finally, respondent determined additions to tax under section 6653(a) for negligence or intentional disregard of rules and regulations. [5] Petitioner apparently was a woman of some means, yet she failed to keep adequate records of her varied financial transactions and sources of income or of the farming operation with her son. It is clear to us that at the very least petitioner's claim for double deductions for her 1980 real estate taxes was due to negligence, so that a portion of the 1980 underpayment likewise is attributable to negligence. The burden of proving that respondent's determination is erroneous lies with petitioner, Enoch v. Commissioner,57 T.C. 781, 802 (1972), but, again, she failed to introduce any evidence on this issue. We sustain respondent's imposition of the additions to tax under section 6653(a). *48 Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
2. Section 103(a) provides: (a) General Rule.--Gross income does not include interest on-- (1) the obligations of a State, a Territory, or a possession of the United States, or any political subdivision of any of the foregoing, or of the District of Columbia; * * *↩
3. Section 103(b)(4)(D) provides, in relevant part: (b) Industrial Development Bonds.-- * * * (4) Certain Exempt Activities.--Paragraph (1) shall not apply to any obligation which is issued as part of an issue substantially all of the proceeds of which are to be used to provide-- * * * (D) airports, docks, wharves, mass commuting facilities, parking facilities, or storage or training facilities directly related to any of the foregoing.↩
4. Section 1031(a) provides: (a) Nonrecognition of Gain or Loss from Exchanges Solely in Kind.--No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidence of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.↩
5. As in effect in 1978, section 6653(a) provides: (a) Negligence or Intentional Disregard of Rules and Regulations with Respect to Income or Gift Taxes.--If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩